UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TARRYN UNIQUE, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>JOSEPH CLAYBAUGH, et al.,<br><br>　　　　　Defendants. | Case No. 22-cv-00711-VKD<br><br>**ORDER OF SERVICE; REFERRING MATTER TO FEDERAL PRO SE PROGRAM TO LOCATE COUNSEL; INSTRUCTIONS TO CLERK** |

Pro se plaintiffs Tarryn Unique and Miguel White filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 against defendants Joseph Claybaugh and the California Department of Corrections and Rehabilitation ("CDCR").[1] Dkt. Nos. 1, 11. Plaintiffs' motions for leave to proceed in forma pauperis (Dkt Nos. 9, 12) are addressed in a separate order. Dkt. No. 14.

## I.　STANDARD OF REVIEW

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). Pro se pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1)

---

[1] Both plaintiffs have consented to magistrate judge jurisdiction. Dkt. Nos. 8, 13.

that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

## II. BACKGROUND

As alleged in the complaint, Plaintiffs are transgender prisoners who previously were incarcerated at Salinas Valley State Prison ("SVSP"). Dkt. No. 1 at 3. They allege that Dr. Claybaugh, a staff psychologist at SVSP, engaged in sexual and other misconduct against them. Dkt. No. 1 at 5-9. Specifically, they allege that Dr. Claybaugh sexually assaulted them and forced them to sell contraband within the prison for approximately one year. *Id.* at 9. Initially, Plaintiffs did not report the assaults for fear of retaliation from SVSP staff. *Id.* at 8. Eventually, Plaintiffs complained to an unnamed correctional captain who arranged for them to be transferred to the California Institution for Men ("CIM"). At CIM, Plaintiffs reported the assaults by Dr. Claybaugh, but say that after reporting they became the target of threats and retaliatory actions from CIM staff. *Id.* at 10-11.

Plaintiffs say they were eventually transferred to different prisons, "so that they can not effectively communicate to pursue this action." *Id.* at 11; Dkt. No. 11 at 2. Currently, plaintiff Unique is at R.J. Donovan Correctional Facility in San Diego, and plaintiff White is at California Men's Colony in San Luis Obispo.

Plaintiffs seek damages and injunctive relief, including placement at the same institution and the removal of disciplinary actions from their records. Dkt. No. 1. at 11-12.

## III. DISCUSSION

### A. Eighth Amendment Claims Against Dr. Claybaugh

The treatment a convicted prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must

1  be, objectively, sufficiently serious, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson*
2  *v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable
3  state of mind, i.e., the offending conduct was wanton, *id.* (citing *Wilson*, 501 U.S. at 297);
4  *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993).

5        "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the
6  Eighth Amendment." *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012). The Ninth Circuit
7  consistently places prisoner sexual assault claims within the same legal framework as Eighth
8  Amendment excessive force claims. *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020).
9  A prisoner may state an Eighth Amendment claim under § 1983 for use of excessive force where
10 force was applied maliciously and sadistically for the purpose of causing harm rather than to
11 maintain or restore discipline. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). However,
12 claims arising from sexual assault are distinct from other Eighth Amendment excessive force
13 claims. *Bearchild*, 947 F.3d at 1144. "[S]exual assault serves no valid penological purpose," and
14 thus, when an inmate proves that a prison guard committed a sexual assault, there is a presumption
15 that the guard acted maliciously and sadistically for the very purpose of causing harm, satisfying
16 the subjective prong of an Eighth Amendment claim. *Id.*; *see Wood*, 692 F.3d at 1049 (malicious
17 and sadistic intent may be presumed because there is no legitimate penological purpose for sexual
18 contact between prisoner and guard). "[A]n inmate need not prove that an injury resulted from
19 sexual assault" because "any sexual assault is objectively 'repugnant to the conscience of
20 mankind' and therefore not de minimis." *Bearchild*, 947 F.3d at 1144 (quoting *Hudson*, 503 U.S.
21 at 10). "A prisoner presents a viable Eighth Amendment claim where he or she proves that a
22 prison staff member, acting under color of law and without legitimate penological justification,
23 touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff
24 member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the
25 prisoner." *Bearchild*, 947 F.3d at 1144. "[A]ll of the elements of a § 1983 sexual assault claim
26 are established if a prisoner proves that a sexual assault occurred." *Id.* at 1145. A sexual assault is
27 actionable, regardless of whether the assault was of a person of the same or opposite sex. *See*
28 *Schwenk v. Hartford*, 204 F.3d 1187, 1198 (9th Cir. 2000).

Based on their allegations, Plaintiffs state cognizable claims against Dr. Claybaugh under the Eighth Amendment for sexual assault and/or sexual harassment.

### B. Claims Against the CDCR

Plaintiffs also name the CDCR as a defendant whom they allege "support[ed] the retaliation against any inmate that files PREA all[e]gation[s] against a staff member, while having rules and policies that claim they have [] zero tolerance policies for staff sexual misconduct, and that actively allows for staff retaliation and the covering of up incidents of staff sexual misconduct." Dkt. No. 1 at 10. Plaintiffs claim that after they reported Dr. Claybaugh's misconduct to CIM staff, they were targeted by CIM staff and later sent to different institutions so that they would have difficulty pursuing claims for relief. *Id.* Plaintiffs also claim they were subject to retaliation at the other institutions to which they were transferred, including the Substance Abuse Treatment Facility and their current places of confinement. *Id.* at 10-11. Plaintiffs claim that the "CDCR staff" never fully investigated their complaints of staff sexual misconduct, and that staff threatened and retaliated against them. *Id.* at 11.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978);[2] however, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under a theory of respondeat superior, *see Board of Cty. Comm'rs. of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). To establish municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d

---

[2] Local governing bodies therefore may be sued directly under § 1983 for monetary, declaratory or injunctive relief for the violation of federal rights. *See Monell*, 436 U.S. at 690. They are absolutely immune from liability for punitive damages under § 1983, however. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted); *see Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). The Ninth Circuit broadly defines an actionable "policy" for purposes of a *Monell* claim as "'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Brass v. County of Los Angeles*, 328 F.3d 1192, 1199-1200 (9th Cir. 2003) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (per curiam)).

The allegations in the complaint are insufficient to state a *Monell* claim against the CDCR because Plaintiffs do not allege that the "CDCR staff" at each institution were acting pursuant to a specific CDCR policy. To properly plead a claim under *Monell*, it is not sufficient to allege simply that a policy, custom, or practice exists that caused the constitutional violations. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012). As explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007), a plaintiff suing a municipal entity must allege sufficient facts regarding the nature of the alleged policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief. *AE ex rel. Hernandez*, 666 F.3d at 636-37 (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). If a plaintiff does not allege sufficient facts to satisfy this standard, he or she must be given leave to amend. *Id.* at 637-38 (finding district court abused its discretion in dismissing *Monell* claim for insufficient factual allegations as to specific nature of county's policy without giving leave to amend to allege such facts).

The Court concludes that the complaint presently does not state a *Monell* claim against the CDCR, but that the complaint may be amended to state such a claim.

### C. First Amendment Retaliation Claim

Plaintiffs allege that unnamed staff members at various institutions retaliated against them for filing grievances regarding Dr. Claybaugh's misconduct. *See* discussion *supra* Section II.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline).

The complaint presently does not state a claim for retaliation against any defendant. However, it is possible that the complaint may be amended to state such a claim.

### D.     Appointment of Counsel

As stated above, Plaintiffs state cognizable claims against Dr. Claybaugh under the Eighth Amendment for sexual assault and/or sexual harassment. *See* discussion *supra* Section III.A. Considering the nature and seriousness of the allegations presented by this complaint, the Court finds this matter warrants appointment of counsel under 28 U.S.C. § 1915(e)(1) based on exceptional circumstances. *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984). In addition, the Court finds that Plaintiffs may be able to amend their complaint to address the deficiencies outlined above with respect to potential claims against the CDCR and/or other defendants, and that Plaintiffs may be assisted by the appointment of counsel in making such amendments.

### IV.    CONCLUSION

For the foregoing reasons and for good cause shown, the Court orders as follows:

1.      This matter is referred to the Federal Pro Se Program to locate counsel for Plaintiffs. Upon an attorney being located to represent Plaintiffs, that attorney shall be appointed as counsel for Plaintiffs in this matter until further order of the Court. The Clerk shall forward to the Federal Pro Se Program: (1) a copy of this order, (2) a copy of the docket sheet, and (3) a copy of the operative complaints. Dkt. Nos. 1, 11.

2.      The following defendant shall be served at SVSP:

     a.      Dr. Joseph Claybaugh, staff psychologist

Service on the listed defendant(s) shall proceed under the California Department of

6

1  Corrections and Rehabilitation's (CDCR) e-service program for civil rights cases from prisoners
2  in CDCR custody.  In accordance with the program, the Clerk is directed to serve on CDCR via
3  email the following documents: the operative complaint, and any attachments thereto, Dkt. Nos.1
4  and 11, this order of service, a CDCR Report of E-Service Waiver form, and a summons.  The
5  Clerk shall also include a magistrate judge jurisdiction consent/declination form.

   No later than 40 days after service of this order via email on the CDCR, the CDCR shall provide the Court a completed CDCR Report of E-Service Waiver advising the Court which defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service (USMS) and which defendant(s) decline to waive service or could not be reached.  The CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within 21 days, shall file with the Court a waiver of service of process for the defendant(s) who are waiving service.

   Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-205 Form.  The Clerk shall provide to the USMS the completed USM-205 forms and copies of this order, the summons and the operative complaint for service upon each defendant who has not waived service.  The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

   3. All communications from Plaintiffs to the Court must be served on defendants, or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

   4. With the exception of service upon defendant Claybaugh, all proceedings in this action are STAYED until counsel is located for Plaintiffs.  Once counsel is appointed, the Court will set a deadline for amendment of the complaint and will make such further orders as may be necessary.

   //
   //
   //

**IT IS SO ORDERED.**

Dated: June 7, 2022

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge