UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARRYN UNIQUE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JOSEPH CLAYBAUGH, et al.,<br><br>    Defendants. | Case No. 22-cv-00711-PCP<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 71 |

    Defendants Joseph Claybaugh and 18 other California Department of Corrections and Rehabilitation (CDCR) employees move to dismiss Tarryn Unique and Miguel White's complaint. For the reasons that follow, the Court denies Defendants' motion.

**BACKGROUND**

    Unique and White are transgender individuals who filed this civil rights lawsuit after allegedly being sexually assaulted and harassed by CDCR staff psychologist Claybaugh on numerous occasions between March and August 2019 while incarcerated at Salinas Valley State Prison (SVSP) in Soledad, California. In March 2020, Unique and White were transferred to the California Institution for Men (CIM) in Chino, California. Unique was then transferred to the Substance Abuse Treatment Facility and State Prison (SATF) in Corcoran, California between September 2020 and August 2021, and is currently incarcerated at the Richard J. Donovan Correctional Facility (RJD) in San Diego, California. After her incarceration at CIM, White was transferred to the California Medical Facility (CMF) in Vacaville, California from November 2020 through July 2021, was incarcerated at the California Men's Colony (CMC) in San Luis Obispo, California from July 2021 through March 2022, and is currently incarcerated at RJD.

    Unique and White assert four claims against various CDCR employees stemming from

their incarceration at these various facilities.

First, they assert a 42 U.S.C. § 1983 claim under the Eighth Amendment against Claybaugh in his individual capacity for sexual assault and harassment.

Second, they assert a § 1983 claim under the Eighth Amendment for deliberate indifference (failure to protect) against Correctional Officers Pola, Fletes, and Canchola (SVSP Defendants) in their individual capacities. Unique and White allege that these officers failed to protect them from Claybaugh's sexual assaults at SVSP. Specifically, they allege that the SVSP Defendants "repeatedly left [Unique and White] alone with [Claybaugh] who was known to have an unusual interest in them, with no video surveillance or security staff supervision, despite the known issues of staff sexual misconduct at SVSP, as well as of incarcerated transgender individuals' susceptibility to sexual assault." Dkt. No. 63, at 30. For example, the SVSP Defendants allegedly knew that Claybaugh frequently requested unscheduled visits with White, sought her out on the recreational yard, and met with her alone after LGBTQ group meetings. *Id.* at 32. Further, Unique and White allege that the SVSP Defendants were aware of their transgender status through their files and were aware of the disproportionate rate of sexual assaults against transgender inmates thanks to a study published by the American Medical Association as well as data generated through an audit conducted by CDCR itself specifically addressing the frequency of staff-on-inmate sexual assault. *Id.* at 30–31.

Third, they assert a § 1983 First Amendment retaliation claim against CDCR staff members Jaramillo, Williams, and Banales (CIM Staff Defendants) in their individual capacities. Unique and White allege that they filed administrative grievances against Claybaugh while at CIM, and that the CIM Staff Defendants thereafter retaliated by ransacking their prison cells, filing fabricated rules violation reports against them, and separating them from one another. Dkt. No. 63, at 25–28.

Fourth, and finally, they assert a § 1983 claim under the Eighth Amendment for deliberate indifference (failure to protect) against 12 prison officials from various facilities: Sanchez, Amis, and Bluford (CIM Housing Defendants) in their individual capacities; Iannone and Merrill (CMF Housing Defendants) in their individual capacities; Grijalva, Riley, Fernandez, Elsayed, and

1  Sterkel (CMC Housing Defendants) in their individual capacities; and RJD Warden Hill and
2  CDCR Secretary Macomber in their official capacities. Unique and White allege that these
3  Defendants failed to protect them from dangerous housing conditions by placing them in
4  dormitory housing (which involved sharing rooms with a large number of people) when they were
5  incarcerated at the various CDCR prison facilities. While housed at CIM, CMF, and CMC,
6  Plaintiffs purportedly suffered additional sexual and physical assaults as a result of their placement
7  in dormitory housing. And though White is currently placed in single-cell housing at RJD, she has
8  allegedly been "endorsed" to be transferred to dormitory housing by staff there. Dkt. No 71, at 32.

9  Defendants move to dismiss Counts III and IV for being improperly joined to Counts I and
10 II under Federal Rule of Civil Procedure 20(a)(2); to dismiss Counts III and IV on the basis of
11 improper venue under Federal Rule of Civil Procedure 12(b)(3); to dismiss Counts II and IV under
12 Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim of deliberate indifference; and
13 to dismiss Count IV under Federal Rule of Civil Procedure 12(b)(6) as to Defendants Hill and
14 Macomber in their official capacities for failing to identify an ongoing unconstitutional custom,
15 policy, or practice by CDCR.

## LEGAL STANDARD

17 The Federal Rules require a complaint to include only a "short and plain statement of the
18 claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a Rule
19 12(b)(6) motion contending that a complaint fails to state a claim, the Court must "accept all
20 factual allegations in the complaint as true and construe the pleadings in the light most favorable"
21 to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029 (9th Cir. 2009).
22 Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable
23 inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,
24 663 (2009). While legal conclusions "can provide the complaint's framework," the Court will not
25 assume they are correct unless adequately "supported by factual allegations." *Id.* at 664.

26 Multiple defendants may be joined in a single action if (1) "any right to relief is asserted
27 against them jointly, severally, or in the alternative, with respect to or arising out of the same
28 transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or

3

fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). For the purposes of the permissive joinder rule, claims arise out of "the same transaction, occurrence, or series of transactions or occurrences" if they have "factual similarity." *See Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013). "[P]ermissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 555 F.2d 914, 917 (9th Cir. 1977).

Federal law provides that the proper venue for a civil action is "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b). A plaintiff bears the burden of demonstrating that the action was brought in an appropriate venue. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), the pleadings need not be accepted as true, and the court may consider facts outside the pleadings. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

## ANALYSIS

### I. Counts III and IV Are Properly Joined with Counts I and II Under Rule 20(a)(2).

Defendants argue that Counts III and IV should be severed from the complaint because they are not properly joined with Counts I and II under Rule 20(a)(2). They contend that Count III, which asserts retaliation against the CIM Staff Defendants, is misjoined because the allegations therein "do not establish that the alleged injuries arose out of the same transaction or occurrence as the incidents at SVSP." Dkt. No. 71, at 16. Specifically, they argue that Count III does not arise out of the same facts as Counts I and II because the success of Unique and White's retaliation claim does not depend upon the veracity of their allegations regarding Claybaugh's harassment and abuse. Defendants also contend that Count IV, which alleges deliberate indifference by various prison officials at CIM, CMF, CMC, and RJD (primarily for placing Plaintiffs in dormitory housing), does not share common questions of law or fact with the alleged assaults at

4

SVSP. *Id.* at 17. They further argue that Counts III and IV are misjoined with each other because Unique and White do not "allege any facts sufficient to establish that there exists common issues of law and fact" between the First Amendment claims in Count III and the Eighth Amendment claims in Count IV. *Id.*

Defendants inflate the joinder requirements under Rule 20(a)(2). Count III involves retaliatory actions allegedly taken by the CIM Staff Defendants as a direct result of Claybaugh's sexual assaults at SVSP. After all, Unique and White allege that they were retaliated against after filing grievances specifically complaining of Claybaugh's misconduct. Counts I, II, and III therefore all arise from a single series of transactions for the purposes of Rule 20. And although Count III asserts a First Amendment claim while Counts I and II assert Eighth Amendment claims, all involve a similar universe of factual issues concerning Unique and White's treatment as transgender inmates at CDCR facilities and CDCR's responsibility therefor. Even if the individual claims in Count III might be segregable from Counts I and II, it is likely that relevant facts—in particular, facts concerning the sexual assault and harassment perpetrated by Claybaugh against Unique and White at SVSP—will overlap. While the retaliation claim in Count III might not depend on the *truth* of the allegations underlying Counts I and II, the underlying facts will nonetheless be relevant to any analysis of Unique and White's later administrative grievances at CIM and the Staff Defendants' responses thereto. Requiring Unique and White to assert their retaliation claims in a different lawsuit would result in needless duplication, and certainly would not promote the efficient and expedient resolution of the various claims being asserted here.

Count IV also meets the low bar set by Rule 20(a)(2). Counts I, II, and IV all assert Eighth Amendment claims against various CDCR Defendants purportedly responsible for Unique and White's mistreatment due to their transgender status. In particular, Unique and White assert that the various CDCR Housing Defendants in Count IV and the various SVSP Defendants in Count II all showed deliberate indifference towards their well-being and transgender status by placing Unique and White in dangerous prison conditions. Though Count II is rooted in the SVSP Defendants' failure to protect them from Claybaugh's sexual assaults while Count IV is rooted in the CDCR Housing Defendants' failure to protect them from assaults by others in dormitory

5

1  housing, Unique and White challenge a purportedly uniform practice by CDCR of failing to

2  protect transgender inmates. These separate consequences of the same allegedly common practice

3  qualify as a "series of transactions or occurrences" under Rule 20(a)(2), and resolving the various

4  counts arising therefrom in a single lawsuit will provide for the most efficient resolution of Unique

5  and White's claims.

6      In short, Counts I, II, and III are likely to share factual similarities arising from the alleged

7  sexual assaults against Unique and White by Claybaugh, while Counts II and IV arise from

8  CDCR's allegedly broader custom of improperly protecting transgender inmates in CDCR

9  facilities. The four Counts are therefore properly joined under Rule 20(a)(2).

10 **II.    Venue for Counts III and IV Is Proper Under the Doctrine of Pendent Venue.**

11     Counts III and IV center around incidents that occurred at CIM (in San Bernadino County

12 within the Central District of California), CMF (in Solano County within the Eastern District of

13 California), CMC (in San Luis Obispo County within the Central District of California), and RJD

14 (in San Diego County within the Southern District of California). Dkt. No. 71, at 20–21. Because

15 those events occurred outside the Northern District of California, Defendants argue that Counts III

16 and IV should be dismissed for improper venue under Rule 12(b)(3).

17     Defendants are correct that neither of the bases for venue under 28 U.S.C. § 1391(b) make

18 this Court a proper venue for Counts III and IV. Section 1391(b)(1) provides that venue is proper

19 in a judicial district in which any defendant resides if all defendants are residents of the state in

20 which the district is located. That provision is inapplicable because Claybaugh is not a resident of

21 California and was not when the lawsuit was filed. Dkt. No. 71-1.[1] Section 1391(b)(2) provides for

22 venue in the district where "a substantial part of the events or omissions giving rise to the claim"

23 occurred. That provision is also inapplicable because the CIM, CMF, CMC, and RJD facilities

24 where the events at issue in Counts III and IV occurred are located outside the Northern District of

25 California. By contrast, Counts I and II center around events that occurred at SVSP, which is in

26 Monterey County within the Northern District of California.

---

[1] The Court may take notice of Defendants' supporting affidavits concerning Claybaugh's residence. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

The inquiry does not end there, however. Under the doctrine of pendent venue, a court may allow claims that do not meet the statutory requirements of Section 1391(b) to be brought alongside claims that do meet the statutory requirements where doing so is justified by "principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants." *Martensen v. Koch*, 942 F. Supp. 2d 983, 998 (N.D. Cal. 2013) (holding that the Court had pendent venue over a § 1983 conspiracy claim that otherwise did not meet statutory venue requirements, given that it was closely related to other civil conspiracy and false imprisonment claims that met the statutory venue requirements). While the Ninth Circuit has not explicitly blessed the pendent venue doctrine, other Circuits have. *See, e.g.*, *Beattie v. United States*, 756 F.2d 91, 101–02 (D.C. Cir. 1984) ("The doctrine of 'pendent venue' is now well established …. It would seem that there is no practical reason for limiting the application of pendent venue to cases where pendent jurisdiction has also been applied."). The test for pendent venue in the Northern District of California is whether the improperly venued claims are "closely related to the factual and legal bases" of the properly venued ones. *Saravia v. Sessions*, 280 F.Supp.3d 1168, 1192 (N.D. Cal. 2017). In *United Tactical Systems LLC v. Real Action Paintball, Inc.*, 108 F.Supp.3d 733, 755 (N.D. Cal. 2015), for example, claims alleging malicious prosecution and abuse of process could be brought notwithstanding improper venue because they were sufficiently related to properly venued claims of unfair competition, restraint of trade, and conspiracy.

As discussed in the context of Rule 20(a)(2), the claims asserted in Counts III and IV are closely related to those in Counts I and II because they arise from Claybaugh's alleged misconduct at SVSP or challenge a common practice by CDCR of exposing transgender inmates to dangerous prison conditions. All four Counts are based on allegations involving the sexual assault and harassment of Unique and White at various CDCR facilities, whether perpetrated directly by Claybaugh or caused indirectly by Defendants' alleged indifference to Unique and White's status as transgender inmates and subsequent complaints, including Defendants' failure to place Unique and White in single-cell (rather than dormitory) housing. Counts I, II, and IV also share the same Eighth Amendment legal basis, with Counts II and IV both alleging deliberate indifference by CDCR Defendants.

1     Because Counts III and IV are closely related both factually and legally to Counts I and II,

2 they can be pursued in this Court under the doctrine of pendent venue notwithstanding the fact that

3 they do not meet the statutory venue requirements under 28 U.S.C. § 1391(b).[2]

**III.     Defendants' Rule 12(b)(6) Motion To Dismiss Counts II and IV Is Denied.**

Defendants separately argue that Counts II and IV must be dismissed because they fail to state valid Eighth Amendment claims of deliberate indifference.[3] The test for deliberate indifference has both an objective prong—whether the plaintiff was exposed to an objectively serious risk of harm—and a subjective prong—whether the defendant was subjectively aware of the plaintiff's exposure to a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). While "constructive notice" of the plaintiff's exposure to risk is insufficient to satisfy the subjective prong, knowledge of circumstantial evidence is enough to "permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id.* at 842–43.

**A.     Unique and White Adequately Plead Deliberate Indifference in Count II.**

Defendants argue that the SVSP Defendants—Correctional Officers Pola, Fletes, and Canchola—did not know that Unique and White were exposed to an objectively serious risk of harm, and that Plaintiffs thus fail to state a claim of deliberate indifference under *Farmer*. It is undisputed that Unique and White never expressly told the SVSP Defendants about Claybaugh's misconduct. Dkt. No. 71, at 26. Unique and White allege, however, that Defendants were aware of sufficient circumstantial evidence to have actual knowledge of the risk of harm. Specifically, they allege:

> SVSP Defendants were further aware that Claybaugh had an unusual interest in White. For example, SVSP Defendants witnessed Claybaugh repeatedly ask custody staff to page White to meet with him for unscheduled visits, remove her from a class in the Education Department for an unscheduled visit, enter the housing units to see White (which was unusual for staff in his position to do), and ask that

---

[2] Given that all of the individual CDCR Defendants are represented by the same counsel and that two of the correctional institutions at issue are located in counties that directly abut the Northern District (and that might indeed be closer to this District's courthouses than to many courthouses of the districts in which they are located), it will not be particularly inconvenient or unfair for the individual Defendants in Counts III and IV to defend themselves in this Court.

[3] Defendants do not move to dismiss Plaintiffs' claim against Claybaugh for sexual assault and harassment (Count I).

8

> White be out-counted to join the LGBTQ group even though White was not on the group roster. SVSP Defendants further knew that Claybaugh frequently sought out and conversed with White on the recreational yard and would ask other inmates as to her whereabouts when he could not find her. SVSP Defendants further knew that Claybaugh was alone with Plaintiffs after the conclusion of the LGBTQ group meetings when all the other inmates participating in those meetings had left. SVSP Defendants were further aware that Claybaugh possessed the only keys to the Education Department building and that Claybaugh had locked the doors to the Education Department building where he assaulted Plaintiffs in violation of the prison's safety protocols.

Dkt. No. 63, at 32.

These factual allegations about Claybaugh's unusual interest in Unique and White and his violations of prison safety protocols, in combination with the SVSP Defendants' purported knowledge that transgender individuals suffer disproportionately from sexual assault during incarceration based on studies from both the American Medical Association (AMA) and CDCR, satisfy *Farmer*'s subjective prong and plausibly support Unique and White's claim that the SVSP Defendants were deliberately indifferent to the risk they faced.

Unique and White further argue that the SVSP Defendants were deliberately indifferent to them because they purportedly failed to meet standards set by the Prison Rape Elimination Act (PREA), which requires that prison facilities develop "a staffing plan that provides for adequate levels of staffing, and, where applicable, video monitoring, to protect inmates against sexual abuse." 28 C.F.R. § 115.13. PREA regulations also state: "If vulnerable detainees are identified pursuant to the screening required by § 115.41, security staff shall provide such detainees with heightened protection, to include continuous direct sight and sound supervision, single-cell housing, or placement in a cell actively monitored on video by a staff member sufficiently proximate to intervene." *Id.* § 115.13(d).[4] Plaintiffs allege that the SVSP Defendants did not comply with these standards because the SVSP Defendants failed to monitor them and left them alone with Claybaugh despite being aware of his unusual interest in them. According to Plaintiffs,

---

[4] 28 C.F.R. § 115.41(d)(7) provides that intake screening for inmates upon transfer to another facility, including for their risk of being sexually abused by other inmates, shall consider "[w]hether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming." As will be relevant in Count IV, 28 C.F.R. § 115.41(d)(8) states that screening should also consider "[w]hether the inmate has previously experienced sexual victimization."

9

this provides further evidence of the SVSP Defendants' subjective knowledge of the risks they faced. Dkt. No. 63, at 32; Dkt. No. 74, at 13.

The Ninth Circuit's decision in *Cortez v. Skol*, 776 F.3d 1046 (9th Cir. 2015), supports Plaintiffs' argument. *Cortez* held that an officer leading three inmates through a prison was deliberately indifferent to the risk that the inmates would be violent with one another, citing evidence that the officer knew about (1) the hostility between the inmates, (2) the inmate victim's protective custody status, and (3) a prison policy requiring leg restraints when moving detention unit inmates. *Id.* at 1051–52. The allegations here are similar. Unique and White allege in their complaint that the SVSP Defendants were aware of (1) Claybaugh's unusual interest in them, (2) the status of Unique and White as transgender individuals in combination with known data about staff-on-inmate sexual assault at CDCR and nationwide, and (3) the PREA standards requiring vulnerable inmates like Unique and White to be monitored more closely (e.g., by video).

*Disability Rights Montana, Inc. v. Batista*, 930 F.3d 1090, 1099 (9th Cir. 2019), also supports Plaintiffs' position. In that case, the Ninth Circuit held that a prison official was subjectively aware of risks to inmates with mental illness through a combination of prior complaints of similar conditions, notice from national mental health care standards, regular grievances from prisoners about lacking mental illness treatment, and reminders by the plaintiff that the prison had deficiencies in treating mental illness. While Unique and White did not explicitly inform the SVSP Defendants about Claybaugh's behavior, the other factors in *Disability Rights* are met, both through the AMA's national report on transgender sexual assault in prisons and the CDCR's own report regarding staff-on-inmate sexual assault.

Because Plaintiffs have pleaded facts sufficient to satisfy both the objective and subjective prongs of the *Farmer* test, the Court denies Defendants' motion to dismiss Count II for failure to state a claim.

**B.     Unique and White Adequately Plead Deliberate Indifference in Count IV.**

Defendants further argue Unique and White fail to state deliberate indifference claims against the 10 prison officials from the CIM, CMF, and CMC facilities who are the subject of Count IV. Defendants again make this challenge under *Farmer*'s subjective prong, arguing that

the named Housing Defendants were not aware of the risk of sexual assault to Unique and White.

Plaintiffs allege in Count IV that the Housing Defendants violated PREA regulations by placing them in dormitory housing as opposed to single-cell housing despite being informed through Plaintiffs' files of their vulnerable status as transgender inmates and prior history of sexual assault. 28 C.F.R. § 115.13(d). Both Unique and White had "information about their gender identity" recorded in their files. Dkt. No. 63, at 30. Further, Plaintiff White's file purportedly reflected "the history of threats and assaults against her by cisgender staff and inmates" and "that White was repeatedly assaulted by Claybaugh while at SVSP." *Id.* at 39. The file also allegedly revealed that she was "assaulted at CIM and CMF when she was housed in dorms or a tent with cisgender male inmates." *Id.* Despite reporting the assaults at both CIM and CMF, White alleges that she was kept in dormitory housing and told by staff that they did not believe her. Specifically, White states that "CIM Housing Defendants repeatedly housed White in dorm settings," which resulted in "two separate assaults by two separate cisgender male inmates, and one assault by three separate cisgender male inmates." *Id.* at 40. She further alleges that despite knowing of the assaults at SVSP and CIM, "CMF Housing Defendants housed White in a tent with approximately 50 cisgender male inmates," after which she suffered "multiple sexual and physical assaults by the same cisgender male inmate at CMF." *Id.* Finally, White alleges that despite knowledge of all the above assaults through her file, "CMC Housing Defendants placed White in a dorm," as a result of which she suffered a "physical assault at CMC by one male prisoner who also attempted to sexually assault her." *Id.*

The allegations supporting Count IV's deliberate indifference claim are even stronger than the allegations supporting Count II given that the Housing Defendants had evidence from Unique and White's files of their transgender status, 28 C.F.R. § 115.41(d)(7), as well as evidence regarding White's "previously experienced sexual victimization," *id.* § 115.41(d)(8). These allegations plausibly suggest that the Housing Defendants were aware of the risks posed by placing Plaintiffs in dormitory housing and ignoring their requests for single-cell housing. Plaintiffs' allegations thus satisfy the subjective prong of *Farmer*, and the Court accordingly denies Defendants' motion to dismiss Count IV for failure to state a claim.

11

**IV.     Defendants' Motion To Dismiss the Official Capacity Claims in Count IV Is Denied.**

Finally, Defendants argue that Unique and White's claim against RJD Warden Hill and CDCR Secretary Macomber in their official capacities should be dismissed for failing to identify a specific policy or practice that constitutes a constitutional violation and that justifies granting injunctive relief. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114 (9th Cir. 2013).[5]

Here, Unique and White challenge CDCR's alleged policy and practice of failing to protect transgender inmates. Additionally, Plaintiffs have pleaded a systematic violation of the federal PREA regulations that require prisons to safely house vulnerable inmates. Dkt. No. 74, at 21. These allegations sufficiently identify a policy or practice for which state officials can be sued in their official capacity. Further, Unique and White specifically seek injunctive relief relating to Defendants' unsafe housing practices and refusal to house them with inmates of their choice. By alleging that White has been "endorsed" to be transferred to dormitory housing at RJD, Plaintiffs properly establish a specific ongoing threat of harm. Dkt. No. 74, at 20. Though White has not yet been transferred, a plaintiff can establish standing for injunctive relief when "the alleged threatened injury is sufficiently likely to occur." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Considering her past experience and current "endorsement" for a transfer into dormitory housing, White has adequately pleaded that she is likely to suffer injury in the future absent injunctive relief.

Because Unique and White adequately plead an imminent threat of harm resulting from an identified CDCR policy or practice, the Court denies Defendants' motion to dismiss the official capacity claims in Count IV.

**CONCLUSION**

For the forgoing reasons, the Court denies Defendants' motion to dismiss.

---

[5] Remedies for official capacity claims are limited to equitable relief because awarding money damages for such claims would contravene state sovereign immunity. *Edelman v Jordan*, 415 U.S. 651, 677 (1974) ("[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief … and may not include a retroactive award which requires the payment of funds from the state treasury.")

**IT IS SO ORDERED.**

Dated: January 17, 2024

_____
P. Casey Pitts
United States District Judge

13